## MARTINIS v. JOHNSTON.

1. Suit on promissory note by endorsee against endorser. After the cause was ready for trial, and the jury empanelled, an agreement was made between the parties that the note should be placed in the hands of a friend who should endeavor to collect it of the maker, and in case of failure, that the defendant should pay the plaintiff one-half the sum due on the face of the note. The jury was thereupon discharged, and each party, also, according to agreement, paid his own costs. On failure to collect the note of the maker, the defendant refused to comply. *Held*, that the plaintiff was entitled again to notice his cause for trial, and after verdict for the plaintiff, the court refused to enter a discontinuance.

2. Notice of trial, after a lapse of several years, was given by the plaintiff's counsel in the name of the attorney on record, to the attorney of the defendant, the latter having become, and then being the clerk of the county. After objection made at the trial—*held*, no cause for new trial, it not appearing that the defendant had been misled or surprised by such notice.

3. Proof of demand and notice to change the endorser, must be strict; mere probability that demand and notice was given at the proper time, not sufficient.

This was an action of assumpsit by endorsee against endorser, on a promissory note drawn by one Potts in favor of T. J. Lawrence, or bearer : transferred by delivery to Johnston, and by him endorsed to Martinis. The note was for $175, dated 24th October, 1822, and payable at eighteen months, with interest. The cause was originally brought in the Hunterdon Pleas. The judgment obtained by the plaintiff in that court was reversed on error in the Supreme Court, and a *venire de novo* awarded. 4 *Halst. R.* 144. The cause was afterwards brought down for trial on the *venire de novo* at the Hunterdon Circuit, October 1827. Having been moved, and a jury empanelled, the parties at the suggestion, and on the advice of a friend conferred in relation to the matters in dispute, and then came into court and declared that the cause was settled. The court therefore dismissed the jury, and no further proceedings were then had for the trial. No further proceedings were had in the cause after the said arrangement, until the year 1840, when the cause was noticed by Mr. Hamilton, the counsel of the plaintiff, in the name of Mr. Saxton, his attorney, for trial at the April Circuit in that year. The action had been brought by Mr. Saxton, and

his name still remains on the record. The notice was served on Mr. Clark as attorney of the defendant, but who had been appointed, and was then the clerk of the county. The cause was not moved at that term, but was again noticed in the same way for the Hunterdon Circuit in August of the same year. It was then moved, when the defendant objected, and insisted that the notice was irregular and unlawful, and that the cause had been settled at a former circuit. The judge ordered on the trial, but reserved the objections. The jury rendered a verdict for the plaintiff, for principal and interest of note.

The defendant took a rule to shew cause why a discontinuance should not be entered, and also a rule to shew cause why the verdict should not be set aside and a new trial granted.

Affidavits were taken under the first rule to shew the character of the alleged settlement made in 1827. The facts in the case, and the reasons which were relied upon in support of each rule, will further sufficiently appear in the opinion delivered.

Argued before Justices NEVIUS, CARPENTER. and RANDOLPH.

Wurts, and P. D. Vroom, for defendant.

Two rules, one for discontinuance, and failing this, to set aside verdict and grant a new trial.

1. Cause settled at the Circuit, and discontinuance should be entered. A valid agreement made in the presence of the court. Suit settled, even if cause of action not extinguished. If defendant had then come into court and asked for a discontinuance, the court would have enforced the. agreement. Parties competent to make such agreement. Den v. Heister, 2 Har. R. 438.

But the proceeding amounted to a retraxit, and extinguished cause of action. The cause of action was extinguished by a new agreement on a good consideration, and this new agreement could have been enforced. An executory contract, not under seal, may be rescinded before breach by verbal contract. Cited on these points, 4 Hulst. 347 ; 6 Cow. 385 ; Jac. Law. Dic. tit. "Retraxit;" 2 Sell. Pr. 336 ; 6 Halst. 174.

2. Irregularly noticed. Mr. Hamilton not authorized after lapse of 13 years, to notice cause in the name of Mr. Saxton. Should have been substituted. Irregularly served on Mr. Clark who had been the defendant's attorney, but had been appointed clerk of the county of Hunterdon.

3. Failure of evidence of demand and notice, so as to charge defendant as endorser of the note. When was demand made? No evidence of time, and none that note was shewn. No waiver is shewn of lawful demand, or notice of non-payment.

4. Court erred in charge that contract was conditional, or that it was rescinded by defendant's refusing to comply.

*W. Halsted,* contra.

CARPENTER, J. delivered the opinion of the court.

The defendant asks that a discontinuance may be entered; but if the court shall not see fit to order a discontinuance, then that the verdict rendered for the plaintiff shall be set aside, and a new trial granted. I am not satisfied that the defendant has made such a case as will authorize us to direct a discontinuance to be entered, and that independent of the objections on the score of delay. After a jury had been empanelled for the trial of this cause at the Hunterdon Circuit, in October 1827, the parties came into court and informed the court and their counsel that the cause had been settled, in consequence of which statement the jury was discharged, and no further proceedings were then had for the trial. The affidavit of Mr. Banghart, who aided the parties in making the supposed settlement of their controversy, has been taken. He states as the agreement, that they agreed that the cause was not then to be tried, and that if the plaintiff could not collect the note of Potts (the drawer), that then the defendant should pay him one-half of the note; and if plaintiff collected any part of Potts, then defendant should pay one-half of the balance. They agreed that witness (Banghart) should take the note and try to collect it of Potts. That each party should pay his own costs (which it seems was not done), and witness understood they were not to go on with

the suit.  Potts, the drawer, subsequently took the benefit of the insolvent laws, and although Banghart endeavored to collect the note, nothing was ever obtained from him.  The defendant refused to pay half the amount due on the note, and the plaintiff, after a long lapse of time, again gave notice of trial, and proceeded with his suit.  Mr. Banghart *understood* that they were not to go on with the suit, and the trial was then accordingly relinquished.  I see nothing in the character of the agreement, nor anything in the evidence taken on this rule, inconsistent with the idea, that if the defendant should not comply with the terms which the plaintiff was willing to accept, the plaintiff might then proceed with his suit.  This seems to be the natural construction of the agreement so far as it is presented to us in the vague recollection of the witnesses after such a lapse of time.  The plaintiff needed no other arrangement. The defendant, who so far as it appears, was a responsible man, supposed that there was hardship under the circumstances in being called upon to pay this note.  The plaintiff placed the note in the hands of a mutual friend who was to try to collect it of the drawer, and agreed not to go on with the suit under the promise of the defendant, that if Potts did not pay, that then the defendant would pay half the amount due on the face of the note.  I do not understand that there was any rescinding of the agreement, strictly speaking, by the plaintiff, but that the agreement itself, so far as it is presented to us, is susceptible of this construction.  It was the *performance*, not the *promise*, that was intended to operate in satisfaction.  This would seem to have been the understanding of the parties at the time, for no discontinuance was entered by the plaintiff, nor were any steps taken by the defendant to compel a discontinuance.  The defendant, when the cause was noticed for trial for the April Circuit, 1840, again slept.  The fact that the plaintiff was about to proceed in the cause, was by that step brought directly to the defendant's notice; and although a term of this court intervened, to which application might have been made, yet the plaintiff, without objection on this score, was permitted at the succeeding August Circuit, again to take his cause down for trial.  This agreement, however understood, is not technically

a retraxit, and the view taken of it renders it entirely unnecessary to consider whether it can have the same effect as a retraxit.

The objection taken to the charge of the judge in relation to the character and effect of the agreement at the Circuit, seems to be disposed of by the preceding remarks.

But if the defendant should not succeed in the first branch of his application, then he asks for a new trial. The first ground is because, as alleged, the cause was irregularly noticed. It was noticed for trial by Mr. Hamilton in the name of Mr. Saxton, the original attorney of the plaintiff, and the notice was given after a chasm of some years in the proceedings, to Mr. Clark, the attorney of the defendant, who had become, and at the time of receiving the notice, was the clerk of the Common Pleas of the county of Hunterdon. After the lapse of time which had occured, if the defendants had actually been surprised, and had suffered any detriment by the course pursued by the plaintiff—if he had in consequence failed to make the necessary preparation for the trial of his cause, and this was shown to the court, then the matter urged would undoubtedly present equitable grounds upon which the court could award a new trial. But the appointment of Mr. Clark to the office he then held did not disqualify him to act as the attorney of the defendant; it does not appear that he failed, or refused to act in consequence of supposing himself to be disqualified; nor that the defendant with full opportunity did not fully prepare for trial, neither misled by the notice in the name of Mr. Saxton, nor by its delivery to Mr. Clark.

It is urged that there is no sufficient evidence of demand and notice. Philip Furst, a witness called on the part of the plaintiff, testified that the plaintiff came to him, who was a neighbor, and arranged that he should go with plaintiff at a subsequent time to call on William Potts, who resided at a distance of some miles. It was a week previous when this arrangement was made. They then fixed the day, and afterwards went on the appointed day. The witness thought it was some time in April, 1824. (The note became due on the 27th April, 1824, being dated on the 24th October, 1822, and payable at eighteen

months). The witness stated that they found Mr. Potts at home or a man who answered to that name, a stranger to the witness.

The plaintiff told him his errand—said that he had a note against him that was due; said it was a note he got of defendant. Mr. Potts paused some time, and then said he believed it was due. The witness did not recollect that it was said to whom the note was given; thinks plaintiff told Potts that defendant got the note of one Walters. He further testified that towards night of the same day they went to the defendant. Plaintiff told him he had been to Potts about that note he got of him. Defendant studied awhile, and said he too expected it was due. Plaintiff said he had demanded the money of Potts on that note, who had told him that he could not pay it just then, but that if he would wait, he would pay it after a while, or something like that. Defendant said he thought Potts was able to pay it, and that plaintiff should wait awhile, and not hurry him; and that if Potts was not able to pay it, he was. Plaintiff said he wanted the money. Defendant said something about endorsing the note, but witness did not recollect what. He said if Potts did not pay it, he would, or could, or must, or something of that kind. I omit all notice of contradictory statements by witnesses called for the defendant, the credibility of which was submitted to, and decided by the jury. The present motion must rest, upon the plaintiff's testimony, the substance of which on this point I have recited, whether it was sufficient for the jury to infer that due and legal demand had been made on the drawer, and notice of non-payment given to the endorser.

It seems to me that the proof is not sufficient. To charge an endorser, there must be strict evidence of demand in due time, and in manner prescribed by law, and of notice to the endorser. I do not take the position, that no inference can be made from other facts. Perhaps the facts proved in the present instance will warrant the inference that the holder, when making demand of payment, had the note ready to deliver it to the maker in case of payment: of this, however, it is unnecessary at present to express an opinion. But I think the facts proved, as to the time when the demand was made, are too remote to warrant the

inference which is sought to be established from those facts. There is no proof of waiver of due demand and notice. There is no proof of an acknowledgment that such demand and notice were made and given at the time necessary, in order to charge the endorser The maker, when demand was made, said he believed the note was due, and a similar general admission was subsequently made by the endorser; but when due, whether on the day when such admissions were made, or some prior day, does not appear. The evidence of demand and notice in due time rests on the proof of the fact, that the holder, prior to the note becoming due, prepared to make demand and to give notice, and that some time in the latter part of April, (the note becoming due on the 27th of April), he did make demand and give notice of non-payment. The inference is sought to be drawn, that such demand and notice, preparation for which was previously made, were at the proper time. If the holder was ignorant of the allowance of the three days of grace, a mistake on this point would deprive him of his remedy against the endorser. A mistake of a single day in giving notice to the endorser would have the same result. Mere probability in proof is not sufficient to charge the endorser. *Lawson* v. *Sherwood*, 2 *E. C. L. R.* 405; 1 *Stark. R.* 314. I am of opinion that the proof in this case is not sufficient, and that a new trial must be granted.

Verdict set aside.

NEVIUS, J. dissented on the last point.